M. GOLDBERG & SONS, et al. v. SOLOMON COHEN, et al.

*Action to Set Aside Fraudulent Conveyance—Fraudulent
Conveyances—Presumption—Relationship of Parties to
Deed—Badges of Fraud—Instructions.*

1. If a transaction is secret and exclusively between near relations,
the law imposes upon an insolvent member of the family who
disposes of his property under such circumstances the burden
of rebutting the presumption of bad faith.

2. In the trial of an action to set aside a deed of assignment as
fraudulent it was not error to instruct the jury that the pur-
chase of a stock of goods at an assignee's sale by a brother of
the assignor, and the placing them in the hands of another
brother who was insolvent, and whose transactions in con-
nection with the stock of goods both before and after the
assignment were suspicious, were badges of fraud, since
these circumstances, together with his near relationship to
all the parties, tended to show the purchaser's entrance,
after the assignment, into a conspiracy which had been
formed by other members of the family, including the
assignor, in contemplation of a fraudulent assignment of the
property.

CIVIL ACTION, tried before *Graham, J.,* and a jury,
at February Term of the Superior Court of CRAVEN County,
for the purpose of setting aside and declaring fraudulent
and void a deed of assignment executed by the defendant,
Sol. Cohen, to defendant, P. H. Pelletier. The defend-
ants, except J. Pizer, filed a joint answer, verified by Sol.
Cohen.  The defendant, J. Pizer, filed his separate answer,
verified January 21, 1896.

The following issue was submitted to the jury :

" Was the deed of assignment from Sol. Cohen to P. H.
Pelletier, assignee, executed with intent to hinder, delay
and defraud the creditors of Sol. Cohen, as alleged in the
Complaint ? "   Answer, " Yes."

GOLDBERG *v.* COHEN.

Upon the trial the plaintiffs offered in evidence the examination of Sol. Cohen and P. H. Pelletier before the clerk of the court, under section 580, etc., of *The Code.* The plaintiffs introduced evidence tending to show that Sol. Cohen was insolvent, and that he had no property except the assigned stock, which was insufficient to pay the preferred creditors; that he had started in business only 12 months before the assignment; that just prior to the assignment he had drawn numerous drafts in favor of his creditors, the plaintiffs, upon himself, which drafts were either never accepted, or, if accepted, were not paid; that while in business he had sold on a credit from his stock of goods large amounts to his insolvent mother, Eliza Cohen, Sr., and his insolvent brother, W. H. Cohen, aggregating $6,191.42; that he had made fraudulent statements to his creditors to obtain some of the goods; that he had purchased large quant ties of goods just prior to his assignment, from August 15, 1894, up to the very date of the assignment, to-wit, over $4,000 worth of goods; that just prior to his assignment he had also borrowed large amounts of money, to-wit, over $2,500; that he had on hand, according to his inventory, on August 1, 1894, $12,500; and that at the time of his assignment, according to the inventory of his assignee, he had on hand only a little over $6,500 in merchandise; that some goods were moved from his store just prior to his assignment, and after his assignment and after the sale of the stock of goods to Lee Cohen by the assignee were returned thereto, in broken packages; that Lee Cohen, his brother, the purchaser of the stock from his assignee, P. H. Pelletier, was not in the State of North Carolina at the time of his purchase, and had never been at the store and his place of business since his purchase, the stock being in the charge and custody of W. H. Cohen, another brother of

GOLDBERG v. COHEN.

the assignor, Sol. Cohen ; that Sol. Cohen, Lee Cohen and
W. H. Cohen were brothers, and Eliza Cohen, Sr., was
their mother ; and that much evidence tending to prove
fraud on the part of Sol. Cohen in making the assignment.
The defendants introduced no testimony.   There was no
exception to the evidence.   During the argument of the
case before the jury by L. J. Moore, one of the attorneys
for the plaintiffs, he was proceeding to comment to the
jury upon the failure of the defendants to put the defend-
ant, Sol. Cohen, in person, upon the stand at the trial to
rebut the testimony of fraud in the assignment.   The
defendants' attorney interrupted Mr. Moore, requesting
that the court require him to desist, as the plaintiffs had
introduced Sol. Cohen's written examination in evidence.
Mr. Moore stated that while he believed he had the right
to comment upon Sol. Cohen's failure to testify at the
trial orally in his behalf, to rebut the evidence of fraud, if
the attorneys for the defendants objected he would desist
from such comment, and he did so desist.

No ruling of the court was insisted upon by the counsel
on either side, and no further objection and no exception
was made by the defendant's counsel at any time.

The court recapitulated and arrayed the evidence upon
each point and explained the law applicable thereto.
Among other things the court charged the jury that there
was no evidence of fraud on the face of the deed, and there
was no direct testimony to the perpetration of a fraud,
but the plaintiffs claim to have furnished certain badges of
fraud from which the jury would be justified in finding
that the deed of assignment was executed with intent to
hinder, delay and defraud plaintiffs and other creditors of
said Sol Cohen.

A " badge of fraud " is a fact calculated to throw sus-
picion on a transaction, and calling for an explanation.

GOLDBERG *v.* COHEN.

" Badges of fraud " afford an inference from which the jury are authorized to conclude that a transaction surrounded by them is fraudulent. They do not of themselves constitute the fraud. Almost any unusual and suspicious act accompanying or relative to the transaction may constitute a badge of fraud. But it is for you to say, first, whether these suspicious circumstances or " badges of fraud " have been proved. The plaintiffs claim to have shown you that during twelve months prior to the deed of assignment Sol. Cohen sold on a credit to his mother Eliza, who was insolvent, a married woman and not a free trader, and to his insolvent brother, W. H. Cohen, large quantities of goods ; that just prior to his assignment, Sol Cohen the defendant, drew numerous drafts on himself and sent them to his various creditors, which drafts were either not accepted, or, if accepted, were not paid when due ; that just prior to the deed of assignment goods in unbroken packages were removed from the store of Sol Cohen to a store across the street, and there kept until after the alleged sale by the assignee, Lee Cohen, a brother of the defendant, and then returned, still unbroken, to said store ; the relationship of the parties, one being the mother and the other two brothers of the defendant Cohen, and the insolvency of all of them, and that Lee Cohen, who is alleged to have purchased the stock of goods from the assignee, has not been in the State, but that the goods were placed in the possession of W. H. Cohen, the other insolvent brother of Sol. Cohen ; the statement of defendant and other creditors in August and September, prior to his assignment, as to his financial condition, alleging that he was worth $11,000 net ; the large amount of goods alleged to have been on hand in July and August, and the amount purchased between the time and the date of the assign-

ment, together with the money alleged to have been borrowed shortly before the assignment, and the small amount of goods on hand at date of assignment.

I charge you that if you believe these circumstances to have been proven, taken together with the insolvency of the defendant, if you believe that, then they are "badges of fraud" from which, together with the other evidence in the case, you may infer the intent of the defendant in executing the deed of assignment. But if you believe the "badges of fraud" to have been proven, still if you believe that at the time of the execution of the deed of assignment the defendant did not have the intent to hinder, delay or defraud his creditors, or some of them, you will answer the issue "No."

There was a verdict for plaintiffs. Motion for new trial ; motion denied ; judgment and appeal by defendants who assign as error :

"1. The Court permitting counsel for plaintiffs to comment upon the failure of defendants to put Sol. Cohen upon the stand as a witness.

"2. In charging the jury that the alleged dealings between Sol. Cohen, his mother and brothers, all being insolvent, was a "badge of fraud."

"3. In charging the sale to his mother and brother, W. H. Cohen, on a credit, they being insolvent, of large amounts of goods shortly before the assignment was a 'badge of fraud.'

"4. In charging that Sol. Cohen's drawing many drafts upon himself just before his assignment, and sending them to his creditors, and said drafts not being accepted or paid when due was a 'badge of fraud.'

"5. In charging that Lee Cohen, who is alleged to have

purchased the goods, did not come to this State, but put W. H. Cohen, the other insolvent brother, in charge of the goods, was a ' badge of fraud.' "

The testimony of Mr. Pelletier was as follows :

" I am the assignee of Solomon Cohen. Took charge of the stock about ten minutes after the assignment was filed. My inventory filed in this Court shows exactly what the consignment consisted of. Began to make sales of stock ten days after the registration of the assignment. I began the sale of stock on Saturday the 29th day of December, 1894. I mean by this the retailing of the stock of goods.

" On the 7th day of March, 1895, I sold the balance of stock at public auction after public notice in the *New Berne Journal.* Lee Cohen was the purchaser at the price of 45 cents in the dollar. Lee Cohen, the purchaser, is the brother of Solomon Cohen, I think.

" The sum total of the amount received for the goods and accounts sold to Lee Cohen on March 7, 1895, received by me as assignee, was $2,697.35, as shown by my account filed.

"The sales by retail, including the amounts collected on account prior to the sale in bulk to Lee Cohen, amounted to $914.97, as shown by my account current filed.

" On the day I commenced the sale of the goods, December 29, 1894, the summons in this action and a copy of the complaint was served on me. I had notice of everything alleged in the papers.

" I am the attorney, director, and stockholder in the Farmers and Merchants Bank of New Berne, N. C.

" I think Solomon Cohen is a cousin to Mrs. M. E. Sultan. Eliza Cohen, Sr., is Solomon Cohen's mother. W. H. Cohen is his brother.

" I had Mr. Frank Hyman, who was in charge of the

business for me, at work collecting the accounts from December 29, 1894, to March 7, 1895, when I sold the stock to Lee Cohen. He collected altogether about 50 or 60 dollars."

The other testimony is immaterial.

*Mr. C. R. Thomas,* for plaintiffs.

*Messrs. Clark & Guion,* and *W. D. McIver,* for defendants (appellants).

AVERY, J. : The assignment of error upon which counsel for defendants relied on the argument was especially the last, in the order in which they appear in the statement of the case on appeal. If the court had charged the jury that the purchase of the remnant of the stock of goods at public auction, and through an agent of one Lee Cohen, of New York, the brother of the assignor, and the placing of another brother, W. H. Cohen, in charge of the goods purchased, considered apart from all other portions of the testimony, constituted a badge of fraud, such instruction would have been clearly erroneous. *Banking Co.* v. *Whitaker,* 110 N. C., 345. But circumstances, which of themselves are not sufficient to arouse just suspicion of fraud, very frequently, when considered, as it is proper to do, in their relation to other portions of the evidence, are calculated to challenge close scrutiny into the good faith of a party to an alleged fraudulent transaction. Thus, the sale of goods by an assignor for the benefit of creditors to an insolvent clerk or to a brother who pays no money, but gives his note, though it does not raise a presumption of fraud, and may be consistent with honesty of purpose without further explanation, is nevertheless calculated to excite suspicion, and is therefore deemed a badge of fraud. *Beasley* v. *Bray,* 98 N. C., 266.

119—5

The sale by the assignor, Sol. Cohen, who was then insolvent, during the year preceding the assignment to his mother, a married woman, who was then incapable of binding herself by contract, and to his insolvent brother, W. H. Cohen, of large quantities of the goods on a credit, and the removal of large quantities of goods to a room just across the street before assignment, together with the bringing of the same back to the store after Lee Cohen had placed W. H. Cohen in charge, and in packages still unbroken, were all circumstances pregnant with suspicion, and, if believed by the jury, invited scrutiny. The evidence of the near relationship of Lee Cohen to the assignor, and to W. H. Cohen and the mother, considered in connection with his entrusting the goods to another near relative of the assignor, who, after being already under suspicion for transactions prior to the assignment, subsequently covinously brought back goods which had been fraudulently concealed and made them a part of the common stock claimed under the purchase for his brother Lee, was properly called to the attention of the jury as a badge of fraud, in the sense that in the light of the surrounding circumstances it gave stronger color to the suspicion that overhung the conduct of the assignor and his near relations, both before and after the assignment. True, the purchase by the absent brother, after the assignment was a fact accomplished, was of itself no evidence of fraud, but his entrusting the management of the goods to a brother whose previous conduct had been suspicious and whose subsequent management of the stock was covinous, tended to show that the concealed goods were brought into the store after, but in pursuance of, a conspiracy to cheat, entered into before the assignment. It is not just to the trial judge to detach a part of a sentence, or an entire sentence in that portion of the

charge enumerating the facts relied on to show the fraud, and insist that the judge meant, or the jury understood, that every single fact mentioned of itself constituted a badge of fraud. If a transaction is secret and exclusively between near relations, the law, under a familiar rule of evidence, where the circumstances are known only to those parties present, imposes upon an insolvent member of the family, disposing of his property under such circumstances, the burden of rebutting the presumption of bad faith. *Helms* v. *Green*, 105 N. C., 251. In *Bank* v. *Bridgers*, 114 N. C., 383, the Court said: "The evidence of near relationship between the parties to a suspicious transaction often constitutes additional evidence of fraud for the jury," but was not *prima facie* evidence of fraud. *Bank* v. *Gilmer*, 116 N. C., 684. While Lee Cohen was not a party to the assignment, nor present when it was executed, yet his purchase of the residue of the stock, and turning it over to an insolvent brother whose conduct was so suspicious before and after the execution of the deed, together with his near relationship to all of the other parties, tended to show his entrance after the assignment into a conspiracy to defraud creditors, formed by other members of the family, including the assignor, in contemplation of making a fraudulent disposition of the property.

While counsel did not abandon, he did not insist upon the other assignments of error. They have been carefully considered, however, and are all without merit. As they would have been disposed of by a *per curiam* but for the exception already passed upon, it is not necessary to discuss them in detail. In defendant's appeal the judgment is affirmed.

Affirmed.