CITY NATIONAL BANK OF NORFOLK v. BRIDGERS

(Filed May 23, 1901.)

1. ASSIGNMENTS FOR BENEFIT OF CREDITORS—*Fraud—Preferred Creditors—Badge of Fraud.*

The relationship of the parties, in an assignment for the benefit of creditors, while a circumstance to be considered, does not amount to a badge of fraud.

2. EVIDENCE—*Assignments for Benefit of Creditors—Declarations—Admissions.*

In an action to set aside a deed of assignment, declarations of the assignor made after the execution of the deed of assignment, are not competent, unless a *prima facie* case of conspiracy between assignee and assignor is established.

ACTION by City National Bank of Norfolk against J. B. Bridgers and J. D. Bottoms, heard by Judge *W. L. Norwood,* at August Term, 1898, of the Superior Court of NORTH-AMPTON County. From a judgment of nonsuit, the plaintiff appealed.

*Day & Bell,* and *Alexander Stronach,* for the plaintiff.
*R. B. Peebles,* for the defendants.

FURCHES, C. J. The defendant J. B. Bridgers was indebted to the plaintiff bank, and on the 24th day of June, 1893, made a deed of assignment of his real and personal property of the defendant John D. Bottoms to secure the debts therein named.

The plaintiff bank, though a large creditor of the assignor, was not named or secured, and this action is brought to set aside and vacate said assignment for fraud. The plaintiff, for the purpose of sustaining the allegation of fraud, offered

in evidence an absolute deed from J. B. Bridgers to W. K. Bridgers, dated the 22d day of June, 1893, for the same property conveyed in the deed of assignment to defendant Bottoms on the 24th day of June, 1893; and a deed dated the 24th day of June, 1893, from W. K. Bridgers conveying the same property back to J. B. Bridgers. The plaintiff then showed that J. B. Bridgers and W. K. Bridgers were brothers, and that John B. Bottoms was a brother-in-law of J. B. Bridgers.

The plaintiff then introduced John D. Bottoms, who testified that he was the trustee named in the deed of assignment of the 24th of June; that he did not have the deed registered; that it was registered before he knew anything about it; that he took possession of the goods in Northampton County on Tuesday after the assignment; that he did not take charge of the goods in Hertford County, for the reason that Mr. Peebles, defendants' attorney, told him that Winborne owed them, and that J. B. Bridgers' interest in them was worth nothing.

The plaintiff introduced A. E. Krise, President of plaintiff bank, and proposed to prove by him the following conversation with J. B. Bridgers in March, 1895: "He (J. B. Bridgers) came to the bank and asked witness to forgive him, and said that he intended to pay the bank every cent that he owed it; when he made the arrangement he expected his brother to pay the bank; that they had treated him (Bridgers) wrong, but he could not blame them after what he (Bridgers) had done; said he was going on the stand and tell the truth, but had rather settle it. Witness replied that the bank only wanted what was right. He then asked witness what he would take; he said he could not tell how much he could pay, as his brothers had all his property." This conversation was objected to by defendants and excluded, and plaintiff excepted.

The plaintiff rested its case, and the defendants moved to nonsuit the plaintiff under the statute. The Court allowed this motion, rendered a judgment of nonsuit, and the plaintiff appealed.

This case was here in 1894, and is reported in 114 N. C., 383. And it is there held that the relationship of the defendants, while a circumstance proper to be considered, did not amount to a badge of fraud. The fact that the defendant J. B. Bridgers had made the deed of the 22d of June to W. K. Bridgers was also before the Court on that appeal, and, while that was a circumstance to be considered, it did not amount to a badge of fraud. The deed of W. K. Bridgers to J. B. Bridgers, of the 24th of June, reconveyed the property to J. B. Bridgers and put the parties in *statu quo*.

It is not a fraud in law for a debtor, by an assignment, to prefer one *bona fide* creditor to another. And it is not shown but what the debts secured in the assignment of June 24th to the defendant Bottoms were actually due and *bona fide*.

This leaves but one question, and that is the competency of the evidence of A. E. Krise as to the declarations of J. B. Bridgers in March, 1895, and it seems that the authorities are against the plaintiff on this exception.

J. B. Bridgers had, nearly two years before that, parted with his interest in the property, and it had passed to the defendant Bottoms for the benefit of creditors. And what may have been said by J. B. Bridgers was hear-say as to the defendant Bottoms, in whom title had vested, and was incompetent. Declarations and admissions of the parties—assignor or assignee—made at the time of the assignment are competent as a part of the *res gestae*. And declarations of the assignor, made afterwards, are competent if a conspiracy or a combination has been entered into between the assignor and the assignee, to effect a fraud on the creditor. But this

must *prima facie* appear, before such declarations are competent. Burrell on Assignments, (5th Ed.), page 554 and page 644; also *Blair v. Brown,* 116 N. C., 631, though not so distinctly stated in this opinion as in Burrell on Assignments, *supra.* But none of these reasons appear in this case for admitting these declarations.

This evidence being incompetent and properly excluded, it seems to us there was nothing left which should have been submitted to the jury.

Affirmed.